**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GENERAL INSURANCE
COMPANY OF AMERICA,

               Plaintiff,

      v.                                     Case No. C-1-04-174

CITIZENS BANK OF THE
TRI-CITIES, et al.,

               Defendants.


## ORDER

### I. Introduction

Safeco Surplus Lines Insurance Company (Safeco) originally brought this action for declaratory relief against defendants Citizens Bank of the Tri-Cities (Citizens Bank) and Royal Vale Hospitality of Cincinnati (Royal Vale).  General Insurance Company of America (General Insurance) was thereafter substituted as plaintiff for Safeco.  Prior to the substitution, Safeco filed a Motion for Summary Judgment (doc. 53), which Citizens Bank opposes (doc. 63).  The matter is before the court upon the motion for summary judgment.  Because Safeco filed the motion for summary judgment before the substitution of parties, the court will refer to Safeco as the plaintiff and moving party for purposes of this Order.

1

**II. Procedural history**

Safeco filed an amended complaint in this action on September 28, 2005 (doc. 45). The following allegations are set forth in the amended complaint: During the pertinent time frame, defendant Royal Vale Hospitality of Cincinnati, Inc. (Royal Vale) owned real estate located at 7965 Reading Road in Cincinnati, Ohio, commonly known as Royal Crown Hotel and Conference Center (Hotel). The Hotel had been closed in March 2003 after being declared "a Nuisance due to Unsafe and Substandard Conditions" and unfit for human habitation. In April 2003, Royal Vale's insurance on the Hotel was canceled because Royal Vale had failed to pay the premium. In July 2003, Citizens Bank, which held a mortgage on the property, purchased $1,000,000 worth of commercial property insurance coverage, known as "force-placed" coverage, for the Hotel from Safeco (Portfolio Security Policy No. MSH7710559B issued to the Plateau Group).[1] Citizens Bank is an additional insured under the Policy. The Policy insures a number of properties, including the Hotel, against fire and loss. On or about October 16, 2003, the Hotel sustained damage as a result of a fire which was ultimately determined by local fire department officials to have been caused by arson. Citizens Bank made a claim under the Policy due to the fire. Safeco had the property appraised, determined that the Hotel buildings had no value, and did not pay Citizens Bank's claim under the Policy.

Plaintiff seeks a declaratory judgment that (1) there is no coverage under the Policy because Citizens Bank does not meet the Eligible Property Condition; (2) coverage under the Policy is excluded by the Neglect Exclusion; (3) coverage under the Policy for the Hotel is void

---

[1] Portfolio Security Policy No. MIH7710559B issued by General Insurance to the Plateau Group on February 7, 2003, has been substituted for the policy issued by Safeco as the policy upon which plaintiff's claims and defendant's counterclaims are based.

due to the concealment of material information; and (4) the actual cash value of the loss to the Hotel caused by the fire on October 16, 2003 is $0.

Defendant Citizens Bank filed its answer to the amended complaint and a counterclaim on October 14, 2005 (doc. 48). Citizens Bank asserts as its counterclaim breach of contract, bad faith refusal to settle insurance claim, breach of fiduciary duty, equitable estoppel, promissory estoppel, unjust enrichment, and fraudulent inducement.

Prior to the filing of the amended pleadings, on July 15, 2004, the court issued an order staying the proceedings pending completion of an appraisal of the subject property pursuant to the terms of the Policy. The parties subsequently advised the court that the appraisal process had been completed.

### III. Motion for summary judgment

Safeco moves for summary judgment on its claims against Citizens Bank and on Citizens Bank's counterclaims against it. Safeco alleges that it is entitled to summary judgment as a matter of law on its claims for declaratory judgment on the grounds that (1) the Hotel does not meet the condition of coverage that the insured property be "eligible property" since the Hotel was condemned prior to a fire on October 16, 2003, so that there is no coverage under the Policy for fire damage, and (2) the Neglect Exclusion in the Policy excludes coverage because prior to the fire, the Hotel had been shut down by court order because it was a fire hazard, arson fires were being set in the Hotel lobby area, and the Hotel had been left vacant, in disrepair, and unsecured. Safeco moves for summary judgment on Citizens Bank's counterclaims on the grounds that (1) if the court finds in favor of Safeco on its declaratory judgment claims and finds that there is no coverage under the Policy, Citizens Bank's counterclaims for breach of contract,

3

bad faith, and breach of fiduciary duty fail as a matter of law, and (2) regardless of the court's decision on coverage, Citizens Bank's counterclaims for bad faith, breach of fiduciary duty, promissory estoppel, equitable estoppel, unjust enrichment, and fraud fail because Citizens Bank cannot prove all the essential elements of these claims.

Citizens Bank contends that Safeco's motion for summary judgment should be denied because (1) Safeco retained the premium paid to insure the Hotel, which is inconsistent with its claim that the Hotel was never eligible for coverage; (2) there is no evidence that the Hotel was ever "condemned," but instead the evidence shows that the owner had made significant repairs and was close to reopening the Hotel and that a destruction order had not been sought; (3) there is a question of fact regarding the Hotel's value since the Sycamore Township Fire Chief, Citizens Bank's appraiser, tax records, the prior insurance company, and the State of Ohio all valued the structures on the property well over Safeco's insurance limit of $1,000,000, and if the Hotel has no value, then Safeco issued a sham policy that insured no risk; (4) by Safeco's own admission, it did not engage in any investigation of the Hotel prior to issuance of the Policy per its own procedures and therefore cannot escape a bad faith claim; and (5) Safeco's neglect defense fails because there is no evidence that the Hotel's condition changed in any manner following issuance of the Policy.

## IV. Rule 56

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

4

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

In its reply brief, plaintiff asks that in the event judgment is not rendered in its favor for all the relief asked and a trial is necessary, the court ascertain pursuant to Rule 56(d) "what material facts exist without substantial controversy and what material facts are actually and in good faith controverted" and to "make an order specifying the facts that appear without substantial

controversy, including the extent to which . . . [declaratory] relief is not in controversy." Rule

56(d) provides,

> If on motion under this rule judgment is not rendered upon the whole case or for
> all the relief asked and a trial is necessary, the court at the hearing of the motion,
> by examining the pleadings and the evidence before it and by interrogating
> counsel, shall if practicable ascertain what material facts exist without substantial
> controversy and what material facts are actually and in good faith controverted. It
> shall thereupon make an order specifying the facts that appear without substantial
> controversy, including the extent to which the amount of damages or other relief is
> not in controversy, and directing such further proceedings in the action as are just.
> Upon the trial of the action the facts so specified shall be deemed established, and
> the trial shall be conducted accordingly.

To assist the court in determining whether the material facts in this case are undisputed, the court

ordered the parties to submit a copy of the proposed findings of fact and conclusions of law filed

by the opposing side and to highlight the proposed findings and conclusions as true, false, or

irrelevant. Citizens Bank complied with the court's order by submitting a highlighted version of

plaintiff's proposed findings of fact and conclusions of law (doc. 56). Plaintiff has not, however,

submitted a highlighted version of Citizens Bank's proposed findings of fact and conclusions of

law. Accordingly, the Court will not issue an order pursuant to Rule 56(d) but will for purposes

of determining whether summary judgment is appropriate set forth plaintiff's proposed factual

findings that Citizens Bank does not dispute and those factual findings proposed by plaintiff that

Citizens Bank has designated as untrue.

### V. Undisputed facts

1.     General Insurance issued Portfolio Security Policy No. MIH7710559B (the "Policy") to

the Plateau Group, the named insured, on February 7, 2003.

2.     Citizens Bank is designated as one of a number of additional insureds under the Policy.

3.     The Policy provides force-placed commercial property insurance coverage for a number of

perils, including fires, for mortgaged properties that are designated by the Plateau Group or the additional insureds when the borrower fails to obtain insurance.

4.  Individual properties are not listed in the Policy. Instead, when the Plateau Group or an additional insured such as Citizens Bank discovers that one of its mortgaged properties has no insurance, it will request and obtain immediate coverage on the property.

5.  Force-placed insurance permits a bank or other mortgage lender, such as Citizens Bank, to obtain immediate coverage on a property on which it holds a mortgage when it discovers that the borrower has failed to obtain coverage.

6.  An insurer providing force-placed insurance accepts the amount of the bank or mortgage lender's request for insurance coverage without verification. This is the underwriting process used for the Policy and for the issuance of coverage on the Hotel.

7.  Safeco Financial Solutions Institution has administered this type of force-placed commercial property insurance program for banks and mortgage lenders referred to as the SFIS Portfolio Security Program. Safeco and General Insurance are two of several insurers who are authorized to issue force-placed commercial property insurance coverage under the Portfolio Security Program. Safeco Financial Solutions Institution administers the Portfolio Security Program on behalf of General Insurance and these other authorized insurers.

8.      The force-placed property insurance provided under the Portfolio Security Program is standard property insurance. As is true for any other standard property insurance, the compensation to the banks or mortgage lenders for losses under this type of insurance is for the actual monetary loss to the mortgaged property. Payment of the amount of the mortgage loan on a property in the event of a loss is not guaranteed.

9.      The Policy requires as a condition to obtain insurance coverage that the property must qualify as an "eligible property." A property that is "condemned" is not "eligible property" (the "Eligible Property Condition").

10.     The Policy excludes coverage if either the insured or the borrower neglects to use all reasonable means to save and preserve property when property is endangered by a peril that is insured against (the "Neglect Exclusion"). Fire is a peril that is insured against in the Policy.

11.     The Policy provides a loss settlement provision for the adjustment and valuation of a loss for commercial buildings such as the Hotel. This provision requires that a commercial building be valued at the lesser of: (1) the "actual cash value" of the property at the time of loss; (2) the amount necessary to repair or replace the property; or (3) the "limit of liability" under the Policy that applies to the property insured.

8

12.   The Policy defines "actual cash value" in the following ways: (1) when the damage to property is economically repairable, "actual cash value" means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration, and obsolescence; (2) when the loss or damage to property creates a total loss, "actual cash value" means the market value of the property in a condition equal to that of the destroyed property, if reasonably available on the used market; or (3) otherwise, "actual cash value" means the market value of new property of like kind and quality, less reasonable deduction for wear and tear, deterioration, and obsolescence.

13.   The Policy contains a general condition that provides the procedure for an insured, such as Citizens Bank, to follow in requesting and obtaining immediate coverage on a mortgage property.

14.   In May 2000, Citizens Bank loaned Royal Vale money to purchase the Hotel and took a mortgage on the Hotel.

15.   After the purchase of the Hotel in May 2000, Royal Vale continued operating a Ramada franchise at the Hotel. In September 2001, Ramada Franchise terminated Royal Vale's franchise after the Hotel failed three quality assurance inspections in one year due to the poor conditions at the Hotel and Royal Vale failed to rectify these conditions.

16.   Royal Vale had financial problems and reported losses of $147,423 in 2000, $201,553 in 2001, and $118,399 in 2002.

17.   In January 2002, the Sycamore Township Fire Department determined that the Hotel
      presented life threatening hazards to occupants and to firefighters and sheriff's deputies
      who responded to the Hotel.  At that time, it was the opinion of the Sycamore Township
      Fire Chief that much of the Hotel was unfit for human habitation.  The problems
      continued to worsen.

18.   The Fire Chief requested a TRO after he inspected the Hotel on March 6, 2003, and
      determined it was unfit for human habitation.  The Township requested the TRO on the
      ground that the Hotel presented "an imminent danger of injury and loss of life to
      occupants."

19.   The Township obtained a TRO requiring that the Hotel be shut down and immediately
      vacated.  The TRO was triggered by several serious fire hazards at the Hotel, including the
      fact that fires were being set in the Hotel lobby area.

20.   On March 10, 2003, the Hamilton County Building Department issued an Official
      Building Order declaring the Hotel "a Nuisance due to Unsafe and Substandard
      Conditions" pursuant to the Hamilton County Building Code.  The Order further declared,
      "All of the above described conditions meet the definition in the Hamilton County
      Building Code of Structural Hazards, Fire Hazard, Hazardous or Unsanitary Premises,
      Inadequate Exits, Improper Occupancy, Unsafe Building and Nuisance."  The Order
      mandated that the Hotel be vacated immediately and revoked the Certificate of
      Occupancy.

10

21.    After the Hotel was closed, in a letter dated March 26, 2003, Royal Vale sought the approval of Citizens Bank to auction off the assets of the Hotel "to maximize the salvage value of the property."  Citizens Bank received the proceeds from the auction.

22.    In April 2003, Royal Vale's property insurance on the Hotel was canceled because it failed to pay the premium.  In July 2003, Citizens Bank requested and immediately obtained $1 million in coverage for the Hotel under the Policy.

23.    From the time the Hotel was shut down in March 2003 until a fire occurred at the Hotel on October 16, 2003, no efforts were made to rectify the serious problems at the Hotel. According to the Fire Chief, the Hotel remained unfit for human habitation.  The Hotel was left vacant and without security.

24.    The fire damaged a portion of the Hotel known as the Convention Center and Penthouse Rooms.

25.    Local fire department officials determined that the fire had been started by the use of accelerants brought to the property.

26.    Citizens Bank made a claim under the Policy for the fire damage.  During its investigation, Safeco learned that the cause of the fire was arson.

11

27.     Section 10 of the Policy contains the following appraisal provision:

If the claimant and we [Safeco] fail to agree on the amount of loss, either can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select an umpire within 15 days. The claimant or we can ask a judge of a court of record in the state where the "insured location" exists to select an umpire. The appraisers shall then set the amount of the loss . . .

### VI. Disputed facts

1.     The underwriting process for force-placed insurance provides that this insurance is placed without requiring an investigation of the condition and value of the individual mortgaged property.  The advantage of this immediate coverage is that it allows the bank or mortgage lender to protect the value of the collateral for its loan, i.e., the mortgaged property, without the delay that would result from requiring an investigation.  The rationale for placing coverage in this manner is that the bank or mortgage lender is in the best position to know the value and condition of its collateral.

12

2.     Citizens Bank determined that the value of the Hotel was $1 million at the time it
       requested coverage.

3.     Safeco investigated and adjusted Citizens Bank's claim in accordance with the express
       provisions of the Policy.

4.     In applying the Policy's loss settlement provisions to the claim, Safeco determined that the
       actual cash value method provided under the Policy was to be used to determine the dollar
       amount of the fire damage.  To assist Safeco in making the actual cash value
       determination, Safeco retained an appraiser, Raymond Jackson.  Jackson conducted an
       appraisal and determined that the Hotel had no market value and, as a result, the fire
       damage had no actual cash value.

5.     Based upon the appraisal, Safeco initiated this action for declaratory judgment, asking the
       Court to determine whether Safeco's determination of actual cash value was correct.

### VII. Safeco's request for declaratory judgment

The parties agree that Ohio law governs their dispute.  Under Ohio law, "[i]f a contract is
clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be
determined."  *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d 107, 108,
652 N.E.2d 684, 686 (1995) (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of
Ohio,* 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 272 (1984)); *Lincoln Electric Company v. St.
Paul Fire and Marine Ins. Co.,* 210 F.3d 672, 684 (6th Cir. 2000).

When the relevant contract language is ambiguous, the interpretation of the contract
language is a factual issue that turns on the parties' intent. *Lincoln Electric,* 210 F.3d at 684
(citations omitted).  The primary role of the court in examining a written instrument is to ascertain

and give effect to the intentions of the parties. ***Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,*** 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." ***Id.*** (citing ***Kelly v. Med. Life Ins. Co.,*** 31 Ohio St.3d 130, 509 N.E.2d 411, syll. ¶ 1 (1987). The court must give plain language its ordinary meaning "unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." ***Id.*** (citing ***Alexander v. Buckeye Pipe Line Co.,*** 53 Ohio St.2d 241, 374 N.E.2d 146 (1978)). Any doubt as to the meaning of ambiguous contract terms is to be resolved against the drafter. ***Dickson v. Ball Corp.,*** 849 F. Supp. 607, 611 (S.D. Ohio 1994) (citing ***Sites v. Moore,*** 79 Ohio App.3d 694, 700, 607 N.E.2d 1114, 1118 (1990)). A writing or writings which are executed as part of the same transaction will be read as a whole, and the parties' intentions as to each part will be gathered from consideration of the whole. ***Foster Wheeler,*** 78 Ohio St.3d at 361, 678 N.E.2d at 526 (citations omitted).

**A.  Does the Hotel meet the "Eligible Property" Condition of Coverage?**

The first issue to be resolved in connection with the motion for summary judgment is

whether the "Eligible Property" condition of coverage is satisfied. The Policy defines "Eligible Property" as follows:

> "Eligible Property" means "residential property" or "commercial property" on which [the Named Insured Mortgagee does not] have evidence of "fire insurance" protecting [the Named Insured Mortgagee's] interest as:
>
> 1. mortgagee;
>
> 2. mortgage servicing agent evidenced by a written agreement; or
>
> 3. owner due to foreclosure of a mortgage.
>
> A property that is condemned or that was an "insured location" under this policy which was canceled by us is not "eligible property."

See Exhibit A, Potter Affidavit #1, Attachment 1, p. 1. The parties disagree as to whether the Hotel had been "condemned" so as to take it outside of the coverage provided under the Policy. Safeco argues that because the word "condemned" is not defined by the Policy, the court should apply the dictionary definitions of the term, under which Citizens is not entitled to coverage. Citizens Bank counters that the Hotel was never condemned, but instead the testimony is that it was possible to remedy the problems with the property; even if the Hotel had been condemned, Safeco agreed to provide coverage for the Hotel in that condition; and the Hotel is the only property insured by the $17,600 premium, so that Safeco's acceptance and retention of the premium is evidence that the Hotel was an "eligible property."

In support of its position, Safeco urges the court to apply the definitions of "condemn" found in the 1990 edition of *Black's Law Dictionary* (6th ed.) and the 1976 edition of the *American Heritage Dictionary* (2nd ed.). Looking to the most recent editions of these dictionaries, the court notes that the 2004 edition of *Black's Law Dictionary* (8th ed.) defines "condemn" as "To adjudge a building as being unfit for habitation." The 2000 edition of the *American Heritage*

*Dictionary* defines "condemned" in pertinent part as "To judge or declare to be unfit for use or consumption, usually by official order."  Safeco argues that under these definitions, the court will find that the Hotel was "unfit for human habitation, and, therefore, condemned."

Safeco has failed to establish that there is no genuine issue of material fact as to whether the Hotel had been "condemned" as that term is used in the Policy.  The dictionary definitions on which Safeco relies do not affirmatively establish that any building that is considered unfit for human habitation in its current condition is "condemned" property.  Rather, the definitions state that a building must be "adjudged," "judged," or "declared" to be unfit for human habitation in order to be "condemned."  There is no evidence that such an adjudication or declaration ever occurred with regard to the subject property.  The TRO issued by the Court of Common Pleas of Hamilton County, Ohio on March 7, 2003, ordered that all structures located at the subject property "are to be immediately vacated, and shall remain so until further order of the Court" and that "[n]o events shall occur on the premises of any kind until the proper steps have been taken to rectify the violations contained in the Complaint and Affidavit of William A. Jetter attached hereto, or until further Order of the Court."  The Order did not adjudge the building as being condemned, and the Order left open the possibility that the Hotel could be reopened if the violations that had been found were rectified.  Plaintiff's Exh C, Meko Aff., Attachment 7. Similarly, the March 10, 2003 letter from the Hamilton County Department of Building Inspections found that several conditions of the property met the definitions in the Hamilton County Building Code of "Structural Hazards, Fire Hazard, Hazardous or Unsanitary Premises, Inadequate Exits, Improper Occupancy, Unsafe Building, and Nuisance" but did not adjudge the property as being condemned.  Although the County advised the property owner that the

16

Certificate of Occupancy for the property was being revoked and ordered that the building was to be vacated immediately, the County left open that possibility that the Hotel could be reopened and the conditions on the property rectified since the letter stated that a "new Certificate of Occupancy will not be issued until such time as you are found to be in compliance with all orders" of various entities.  Plaintiff's Exh C, Meko Aff., Attachment 8.  Accordingly, the court cannot say based on the record before it that the Hotel had been "condemned" as that term is commonly defined prior to the fire.

In addition to the uncertainty as to whether the Hotel had been condemned prior to the fire, there is a question as to whether the condition of the property had deteriorated appreciably between the time the Policy was issued and the time the fire occurred.  If no appreciable change had occurred, then Safeco's decision to insure the property casts doubt on its present assertion that it did not deem the property eligible for coverage, raising significant issues regarding Safeco's intent and interpretation of the Policy.  Further development of the record and weighing of evidence is necessary in order to resolve these issues.  Accordingly, Safeco is not entitled to summary judgment on the ground that the Hotel was not eligible for coverage.

**B. Was coverage precluded under the "Neglect Exclusion?"**

Safeco argues that there is no coverage under the Policy for the fire damage because

coverage is excluded by the "Neglect Exclusion."  See Exhibit A, Potter Affidavit #1, Attachment

1, p. 7.  This provision states, in pertinent part,

> We do not insure for loss caused directly or indirectly by any of the following.
> Such loss is excluded regardless of any other cause or event contributing
> concurrently or in any sequence to the loss.
> * * *
> 5. Neglect, meaning you or the "borrower's" neglect to use all reasonable means to
> save and preserve property at and after the time of a loss, or when property is
> endangered by a Peril Insured Against.

Safeco acknowledges that Ohio courts have not considered what is meant by the phrase "when

property is endangered by a Peril Insured Against" when used in an insurance policy, but Safeco

contends that courts from other jurisdictions have interpreted this exclusion and found that the

phrase places an obligation on the insured to save and preserve the insured property before the

loss occurs.  Safeco contends that there is ample evidence before the Court to show that there was

a "readily identifiable, imminent, and real peril endangering" the Hotel, i.e., the threat of fire,

because the Hotel had been declared a fire hazard and there was a threat of criminal activity.  See

Jetter depo., pp. 38-41 (Exhibit D).

Citizens Bank argues that the "Neglect Exclusion" does not apply because the Hotel was

in the same condition when Safeco issued the Policy as it was on the date of the fire.  Citizens

Bank contends that property cannot be excluded from coverage because of neglect that occurred

before issuance of the Policy.  Citizens Bank argues the evidence is clear that the Hotel did not

deteriorate between the date Safeco accepted the risk and the date of the fire.  Citizens Bank notes

that the adjuster testified that he has no knowledge of anything that created a higher risk between

18

the date Safeco issued the Policy and the date of the fire. Olsen depo., p. 34 (Exhibit F). Finally, Citizens Bank argues that if the alleged neglect occurred prior to issuance of the Policy, then application of the "Neglect Exclusion" means that no risk ever attached.

Upon a review of the record, the Court finds that Safeco is not entitled to summary judgment based on the "Neglect Exclusion" provision of the contract. The language of this provision is not clear and unambiguous, and it is not clear what the parties intended by use of the language. The cases from other state appellate courts cited by Safeco are not helpful in interpreting the contract language or ascertaining the parties' intent in this case. *See Tuchman v. Aetna Casualty and Surety,* 44 Cal.App.4th 1607, 52 Cal. Rptr.2d 274 (1996); *Battisto v. Employers Mutual Casualty,* 1986 WL 13542 (E.D. Pa.). As in this case, the policy in each of those cases defined "neglect" as "neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against." The issue in *Tuchman* was whether the neglect exclusion applied to neglect preceding a loss due to theft. The court determined there was not sufficient evidence to support application of the exclusion to the facts of that case. The court looked to analogous California cases indicating that negligence by an insured which causes a fire does not preclude insurance coverage and concluded that neglect of an insured "which creates a situation from which theft may more easily be effectuated is not, by itself, a readily identifiable, imminent, and real peril which falls within [the exclusion]." *Id.* at 279. *Tuchman* does not assist plaintiff inasmuch as the case suggests that neglect which creates a situation giving rise to a fire hazard is not a "readily identifiable, imminent, and real peril" so as to fall within the exclusion for property that is endangered "by a peril insured against."

19

In *Battisto,* the court held that "the parties intended that the insured be covered for losses resulting from the necessary demolition and repair of a building where collapse is imminent." 1986 WL 13542 * 5. *Battisto* does not assist the court in discerning the parties' intent in this case.  The court cannot say based on the record before it that the parties intended that there not be coverage under the Policy for fire loss resulting from neglect of the insured that occurred prior to the fire.  Rather, further development of the record and resolution of disputed factual issues is necessary in order to discern the parties' intention in this regard.

Finally, the court finds that Safeco's agreement to issue the Policy and its retention of the premium raises a question as to whether Safeco intended to exclude coverage for fire based on neglect on the part of the insured that occurred prior to the fire.  If Safeco so intended, and if the danger of fire resulting from such neglect was present when Safeco issued the Policy, then there is an issue as to whether Safeco acted in good faith by issuing the Policy and accepting a premium when it knew or should have known that the property was not eligible for coverage for a fire loss.  For these reasons, plaintiff is not entitled to summary judgment on the ground that coverage for the fire loss was precluded under the "Neglect Exclusion."

### VIII. Citizens Bank's counterclaims

Safeco argues that if the court finds there is no coverage under the Policy, then Citizens Bank's counterclaims for breach of contract, bad faith, and breach of fiduciary duty fail as a matter of law.  In the alternative, Safeco argues that regardless of the court's ruling on coverage, Citizens Bank's counterclaims for bad faith, breach of fiduciary duty, unjust enrichment, promissory estoppel, equitable estoppel, and fraud fail because Citizens Bank cannot prove all the essential elements of these claims.  Safeco argues that because of the nature of force-placed

20

insurance, which enables a bank or mortgage lender to obtain immediate coverage on a property, and the procedures it follows in underwriting such policies, it relied on Citizens' Bank knowledge and condition of the Hotel implicit in its request for $1 million coverage. Safeco alleges that it was not aware of the condition or value of the Hotel at the time Citizens Bank requested coverage. Safeco contends that in adjusting the loss, it was not authorized to simply pay the $1 million Policy limits but instead was required to follow the express Policy terms and determine which definition of actual cash value under the Policy to apply. Safeco alleges that it determined that the claim fell under the third definition of actual cash value and it obtained the Jackson appraisal, which indicated that the Hotel buildings had no market value. Safeco contends that it filed this declaratory judgment action to ensure that its interpretation was correct.

Citizens Bank argues that even if the court finds no coverage, Safeco remains liable for payment of policy benefits, breach of fiduciary duty, and bad faith because the only reason for finding there was no coverage would be the condition of the Hotel prior to issuance of the Policy. Citizens Bank contends that a conclusion of no coverage based upon the prior condition of the Hotel would be inconsistent with Safeco's acceptance and retention of the premium. Citizens Bank contends that Safeco's appraisal of zero value is evidence that it issued a sham policy under which it accepted a premium in exchange for no risk. Citizens Bank also points to evidence it contends demonstrates that it justifiably requested $1 million in coverage, including a prior appraisal, a prior policy issued on the property, and a 2003 tax bill, as well as other documents.

**A. Breach of contract**

Citizens Bank claims as Count I of its counterclaim that Safeco has breached its contractual obligations by refusing to pay benefits under the Policy. To prove a breach of

contract under Ohio law, a party must establish the existence of a contract, performance by the party, breach by the other party, and damage to the party. ***Doner v. Snapp,*** 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994). Citizens Bank has come forward with evidence that demonstrates there are genuine issues of material fact underlying resolution of the question of whether Safeco breached its obligations under the Policy. Accordingly, Safeco is not entitled to summary judgment on the breach of contract counterclaim.

**B. Bad faith**

Citizens Bank asserts as Count II of its counterclaim that Safeco has acted in bad faith with regard to paying or settling the insurance claim by refusing to pay benefits under the Policy without a reasonable justification for doing so. In order to establish the tort of bad faith in the processing of a claim of an insured under Ohio law, the insured must show that the insurer's refusal to pay is not predicated upon circumstances that furnish a reasonable justification for the refusal. ***See Zoppo v. Homestead Ins. Co.,*** 71 Ohio St.3d 552, 644 N.E.2d 397 (1994). In this case, there is a question as to whether Safeco acted in bad faith by accepting and retaining a premium and then claiming that the Hotel had no value when presented with a claim under the Policy. Resolution of this issue is for the jury to decide. Accordingly, Safeco is not entitled to summary judgment on this counterclaim.

**C. Breach of fiduciary duty**

Citizens Bank asserts as Count III of its counterclaim that Safeco has breached its fiduciary duty to Citizens Bank by refusing to pay benefits under the Policy. "[A] breach of fiduciary duty in the context of an insurer/insured relationship arises when the insurer fails to perform under the contract or unreasonably refuses to act in a prompt manner in performing its

22

contractual duties." ***Red Head Brass v. Buckeye Union Insurance,*** 135 Ohio App.3d 616, 632, 735 N.E.2d 48, 60 (1999). There is evidence in the record that calls into question whether Safeco acted in accordance with its fiduciary duty to Citizens Bank, despite Safeco's alleged compliance with the Policy procedures in adjusting the loss. Accordingly, Safeco is not entitled to summary judgment on this counterclaim.

**D. Equitable estoppel**

Citizens Bank alleges as Count IV of its counterclaim that it believed it was entering into a valid and binding fire insurance policy with Safeco that would provide benefits in the event of a fire at the property; in reliance on Safeco's promise to insure the property, Citizens Bank paid a premium and did not seek alternative insurance; as a result of the fire, Citizens Bank filed an insurance claim with Safeco; Safeco has admitted that the Policy was a sham policy by asserting that the property was in a depressed condition prior to issuance of the Policy and the structures on the property had no value; by accepting the premium, Safeco is barred from denying meaningful insurance coverage and/or relying on its interpretation of "actual cash value" under the doctrine of promissory estoppel; and Citizens Bank has been damaged as a result of Safeco's refusal to provide insurance benefits. Safeco contends that it is entitled to summary judgment on the equitable estoppel claim because as a result of the nature of the underwriting process for the force-placed coverage, it did not know that the Hotel buildings had no market value, that the Hotel was condemned, and that the Hotel was endangered by a peril insured against. Safeco avers that Citizens Bank has no evidence to contradict Safeco's position that it intended to pay benefits if a loss that was covered by the Policy occurred at the Hotel, so that Citizens Bank cannot prove that Safeco made a factual misrepresentation when it issued coverage for the Hotel.

23

The elements of an equitable estoppel claim under Ohio law are (1) a party made a factual misrepresentation, (2) the misrepresentation is misleading, (3) the misrepresentation induces actual reliance which is reasonable and in good faith, and (4) this reliance causes detriment to the relying party.  ***See Doe v. Blue Cross/Blue Shield of Ohio,*** 79 Ohio App.3d 369, 379, 607 N.E.2d 492 (1992).  Safeco has failed to show that there is no genuine issue of material fact as to any of these elements.  To the contrary, as set forth above, the evidence discloses that there are genuine issues of material fact as to the value of the Hotel, whether the Hotel was "condemned" within the meaning of the Policy, and whether the Hotel was "endangered by a peril insured against."  Thus, Safeco is not entitled to summary judgment on the equitable estoppel counterclaim.

**E. Promissory estoppel**

Citizens Bank alleges as Count V of its counterclaim that it relied to its detriment on Safeco's promise to insure the subject property.  Citizens Bank contends that promissory estoppel comes into play to the extent Safeco alleges that the Hotel was not an eligible property, in which case the Policy never attached.  Safeco argues that the promissory estoppel counterclaim fails as a matter of law because there is a contract that governs the parties' rights and obligations.  Safeco asserts that Citizens Bank cannot proceed on this counterclaim because it has enforceable contractual rights under the Policy and must pursue those rights under a breach of contract theory.  The doctrine of promissory estoppel may apply depending upon the facts as they develop.  Accordingly, the Court declines to grant summary judgment in favor of Safeco on the promissory estoppel counterclaim.

**F. Unjust enrichment**

As Count VI of its counterclaim, Citizens Bank alleges that it would constitute unjust enrichment for Safeco to retain the benefit of Citizens Bank's premium without providing insurance benefits.  Citizens Bank alleges that Safeco should be forced to provide meaningful insurance coverage to it.  Safeco contends that it is entitled to summary judgment on this claim because the doctrine does not apply where there is an express contract between the parties.  Citizens Bank agrees that the doctrine operates only where there is no contract but argues to the extent no risk ever attached, unjust enrichment comes into play.

Unjust enrichment occurs when one party confers a benefit on another without receiving just compensation for the reasonable value of the services rendered.  *Sammarco v. Anthem Ins. Cos., Inc.,* 131 Ohio App.3d 544, 557, 723 N.E.2d 128, 137 (1990), *overruled on other gds., Littlejohn v. Parrish*, 163 Ohio App.3d 456, 839 N.E.2d 49 (2005).  Under Ohio law, a party to an express agreement cannot bring a claim for unjust enrichment absent fraud or illegality.  *Id.*  In this case, although there is an express contract that covers the right to the insurance payments Citizens Bank seeks, Citizens Bank has made an allegation of fraud.  Accordingly, the existence of the contract does not preclude Citizens Bank from proceeding past the summary judgment stage on its unjust enrichment counterclaim.

**G. Fraud**

As the final count of its counterclaim, Citizens Bank alleges that Safeco fraudulently induced it to enter into a policy that was a sham in that Safeco never intended to pay any benefits under the Policy because, according to Safeco, the property had no value.  Safeco alleges that the fraud counterclaim fails as a matter of law because Citizens Bank has no evidence to contradict

25

facts that demonstrate Safeco intended to pay benefits if a loss that was covered by the Policy occurred at the Hotel.

In order to establish a fraudulent misrepresentation claim under Ohio law, a party must establish the following elements: 1) a representation, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, 4) with the intent of misleading another into relying upon it, 5) justifiable reliance upon the representation, and 6) a resulting injury proximately caused by the reliance. ***Burr v. Bd. of County Commrs. of Stark County,*** 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (1986). Citizens Bank has come forward with evidence that calls into question whether Safeco's conduct in connection with the issuance of the Policy was fraudulent. Accordingly, plaintiff is not entitled to summary judgment on the fraud claim.

## IX. Conclusion

Plaintiff's motion for summary judgment (doc. 53) is **DENIED.** This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**


S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\04-174msjinsplcyPUB.wpd